IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NEW TRAIL CAPITAL and | : | |
| MICHAEL BEER, | : | CIVIL ACTION |
|     Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| THE NORTHWEST COMPANY, INC., | : | No. 07-2073 |
|     Defendant. | : | |

## MEMORANDUM AND ORDER

**Schiller, J.**                                                                                                         **October 4, 2007**

    Plaintiffs Michael Beer and New Trail Capital ("NTC") bring this action against Defendant Northwest Company, Inc. ("Northwest") asserting claims of breach of contract, unjust enrichment, quantum meruit and promissory estoppel. Presently before the Court is Defendant's motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue to the Southern District of New York. For the following reasons, Defendant's motion is granted because this Court lacks jurisdiction over the Defendant, and this case is transferred to the United States District Court for the Southern District of New York.

### I.    BACKGROUND

    Michael Beer is the founder and owner of NTC, a consulting firm based in Philadelphia, Pennsylvania. (Compl. ¶ 1; Pls.' Mem. of Law in Opp'n to Def.'s Mot. to Dismiss [hereinafter Pls.' Opp'n] Ex A [hereinafter Beer Aff.] ¶¶ 2, 4.) Northwest, a North Carolina corporation with its principal place of business in Roslyn, New York and its showroom in New York, New York, manufactures and sells textiles. (Def.'s Mem. of Law in Supp. of Def.'s Mot. to Dismiss [hereinafter Def.'s Mem.] Ex B [hereinafter Auerbach Aff.] ¶¶ 3-4.) In June 2004, Beer contacted Northwest

about the possibility of entering into a business relationship whereby Plaintiffs would provide financial consulting services to Northwest. (*Id.* ¶ 6; Beer Aff. ¶ 6.) Beer exchanged telephone calls and emails with Ross and Shay Auerbach, both officers of Northwest, for purposes of negotiating an agreement. (Auerbach Aff. ¶ 7; Beer Aff. ¶ 7; Pls.' Opp'n at 2.) The parties also conducted in-person meetings, all of which took place in New York. (Auerbach Aff. ¶ 8.) Although Beer visited Northwest's New York offices during the course of negotiations, Northwest did not send any representatives to Pennsylvania in connection with those negotiations. (*Id.*)

On June 14, 2004, the parties entered into a contract (the "2004 Letter Agreement") whereby Plaintiffs agreed to solicit financial opportunities for Northwest. (Compl. ¶ 6; Auerbach Aff. ¶ 4; Beer Aff. ¶ 7.) In exchange, Northwest agreed to pay Plaintiffs a success fee consisting of a sliding scale percentage of any transaction Plaintiffs generated plus stock options. (Compl. ¶ 8; Beer Aff. ¶ 8.) The 2004 Letter Agreement had a one-year term that expired on December 31, 2004. (Compl. ¶ 9.) Both during the term of the agreement and afterwards, Plaintiffs investigated several business opportunities on behalf of Northwest, both in and outside Pennsylvania, and assisted Northwest in evaluating and negotiating potential transactions. (*Id.* ¶¶ 10-15; Beer Aff. ¶ 11.) Northwest was aware of Plaintiffs' efforts in Pennsylvania. (Beer Aff. ¶ 21.)

Among the investors identified by Plaintiffs was Susquehanna International Group ("SIG"), a Pennsylvania-based corporation interested in acquiring Northwest. (*Id.* ¶¶ 12-13.) In the last quarter of 2005, Beer met with SIG representatives at SIG's headquarters in Pennsylvania. (Compl. ¶ 15.) Northwest then entered into negotiations with SIG's New York, New York branch regarding a potential acquisition of Northwest (the "SIG transaction"). (Auerbach Aff. ¶ 11; Beer Aff. ¶¶ 13-14.) Northwest's Auerbachs participated in several negotiations and meetings with SIG's New York

based representatives, some of which Beer attended, all of which took place in New York, either in Roslyn or New York City. (Auerbach Aff. ¶¶ 14-16; Def.'s Reply Mem. Of Law in Further Supp. Of Def.'s Mot. to Dismiss Ex. A [hereinafter Auerbach Reply Aff.] ¶ 6.) Additionally, according to Plaintiff, at the outset of these negotiations in November 2005, Ross Auerbach met with Beer in Philadelphia and promised Beer that Northwest would "compensate [Plaintiffs] for their services regardless of the success of the transaction with SIG." (Compl. ¶ 21; Beer Aff. ¶ 19.) Auerbach denies that he made any such promises. (Auerbach Reply Aff. ¶ 9.)

Northwest and SIG entered into a letter of intent on January 5, 2006. (Compl. ¶ 16 & Ex A (letter of intent).) Although Plaintiffs were not parties to the agreement, the letter of intent expressly stated that Plaintiffs would receive "a cash fee, based on a declining percentage of [Northwest's] business valuation" at the closing of the deal. (Compl. Ex. A ¶ 5.) In September 2006, Northwest terminated negotiations with SIG for reasons Plaintiffs considered unjustifiable. (Compl. ¶ 23.)

In their Complaint, Plaintiffs raise four counts: (1) breach of contract (2) unjust enrichment (3) quantum meruit and (4) promissory estoppel. All of Plaintiffs claims arise out of the failed SIG transaction: Plaintiffs assert that in failing to go through with the acquisition, Northwest breached a contract with Plaintiffs and thus Plaintiffs are entitled to compensation irrespective of whether the acquisition was consummated. (*Id*. ¶¶ 19-53; Beer Aff. ¶ 15.)

**II.    STANDARD OF REVIEW**

Once challenged by a defendant, the plaintiff bears the burden of showing the existence of personal jurisdiction as to that defendant. *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001). At the motion to dismiss stage, a plaintiff must establish a *prima facie* case of personal

jurisdiction and "is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).  A plaintiff "presents a prima facie case for the exercise of personal jurisdiction by 'establishing with reasonable particularity sufficient contacts between the defendant and the forum state.'" *Mellon Bank East (PSFS) Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (*quoting Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Assoc.*, 819 F.2d 434, 437 (3d Cir. 1987)).  On the other hand, the burden of illustrating that a transfer is warranted under 28 U.S.C. § 1404 is borne by the moving party, here the Defendant.  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).  Transfer is appropriate where the relevant private factors and public factors taken together indicate that the litigation would proceed more conveniently in another forum.  *Id.*

**III.    DISCUSSION**

   *A.    Northwest is Not Subject to Personal Jurisdiction in Pennsylvania*

Northwest has moved to dismiss Plaintiffs' Complaint based on a lack of personal jurisdiction.  Plaintiffs respond that Northwest is subject to specific jurisdiction in this forum because "Defendant purposefully directed its activities at Plaintiff [sic], a Pennsylvania corporation and a Pennsylvania resident, when it negotiated the Letter Agreement, when it entered into the Letter Agreement, when it made promises to Beer, and when it breached the Letter Agreement and those promises."  (Pls.' Opp'n at 7.)  A district court may exercise jurisdiction over a non-resident of the forum state to the extent allowed under that state's laws, so long as exercising jurisdiction comports with due process.  FED. R. CIV. P. 4(e) (2007).  Pennsylvania's jurisdictional statute is coextensive with the Due Process Clause of the United States Constitution and therefore, this Court's sole inquiry

is whether exercising jurisdiction over Defendant meets the standards of constitutional due process. 42 PA. CONS. STAT. ANN. § 5322 (2007); *Farino*, 960 F.2d at 1221.

In accordance with due process, a court may exercise specific personal jurisdiction over a non-resident defendant if minimum contacts exist between the defendant and the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (internal quotations omitted); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985). The minimum contacts inquiry focuses on whether "a nonresident defendant has 'purposefully directed' his activities at a resident of the forum and the injury arises from, or is related to, those activities." *Telcordia Tech. Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177 (3d Cir. 2006) (footnote omitted) (*quoting Gen. Elec.*, 270 F.3d at 150). "In contract cases, courts should inquire whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach." *Gen. Elec.*, 270 F.3d at 150.[1]

In determining whether a defendant's contacts are sufficiently related to a plaintiff's injuries, the Court must conduct a "fact-sensitive inquiry" to ascertain whether the defendant's contacts are "closely tailored to that . . . [defendant's] accompanying substantive obligations." *O'Connor*, — F.3d —, Civ. A. No. 05-3288, 2007 WL 2135274, at *7. Although "[t]he causal connection can be somewhat looser than the tort concept of proximate causation . . . it must nonetheless be intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably foreseeable." *Id.* (internal citations omitted).

Plaintiffs injuries are not sufficiently related to any contacts Northwest had with

---

[1] It is unnecessary to analyze jurisdiction on a claim-by-claim basis in this case because all of Plaintiffs' claims arise from the same factual scenario. *See O'Connor v. Sandy Lane Hotel Co., Ltd.*, — F.3d —, Civ. A. No. 05-3288, 2007 WL 2135274, at *3 n.3 (3d Cir. July 26, 2007).

Pennsylvania. Plaintiffs' claims arise from Northwest's alleged breach of contract "by unilaterally, and without valid justification, refusing to close on the sale of SIG," and Northwest's consequent failure to compensate Plaintiffs for "services as they relate to SIG" in the amount contemplated by the letter of intent between Northwest and SIG. (*See* Compl. ¶¶ 19-21, 25-27, 31-32, 39, 45-48, 50-53 & Ex. A ¶ 5.) None of Defendant's contacts with Pennsylvania, however, relate to this alleged breach.

Northwest never reached out to or purposefully directed their activities at Pennsylvania for any reason related to the SIG agreement—the relevant negotiations and meetings all took place in New York. (Auerbach Aff. ¶¶ 14-16; Auerbach Reply Aff. ¶ 6.) Indeed, only two possible connections between the SIG transaction and Pennsylvania exist: (1) the fact that SIG is a Pennsylvania corporation and (2) the fact that Plaintiff Beer had a meeting in 2005 with SIG in Pennsylvania. (Beer Aff. ¶ 12.) These facts are inapposite. *See Mellon Bank (East) PSFS, Nat'l Ass'n v. DiVeronica Bros., Inc.*, 983 F.2d 551, 557 (3d Cir. 1993) ("Contracting with a resident of the forum state does not alone justify the exercise of personal jurisdiction over a non-resident defendant."); *see also O'Connor*, — F.3d —, Civ. A. No. 05-3288, 2007 WL 2135274, at *3 (personal jurisdiction requires "a deliberate targeting of the forum" by defendant).

Plaintiffs improperly argue that jurisdiction lies in Pennsylvania because of Northwest's overall contacts in connection with the 2004 Letter Agreement and any subsequent implied agreement between the parties.[2] It is the failure of the SIG transaction, however, that constitutes the

---

[2] Although the 2004 Letter Agreement expired on December 31, 2004, Plaintiffs assert that the parties "continued to transact business pursuant to the terms of the Agreement." (Compl. ¶ 9.) It is not necessarily clear that Plaintiffs had any agreement with Northwest at the inception of the SIG transaction that would support their breach of contract claim, however, we leave this matter for the Southern District of New York. It is curious, however, that although Plaintiffs

breach of contract of which Plaintiff complains and upon which this Court must focus its jurisdictional inquiry. As a matter of law, this Court holds that any contacts that Northwest had with Pennsylvania in connection with the 2004 Letter Agreement are too remote to warrant personal jurisdiction.[3] *See O'Connor*, — F.3d —, Civ. A. No. 05-3288, 2007 WL 2135274, at **7-8. Finally, although Auerbach came to Pennsylvania once in November 2005 and allegedly promised Beer compensation for his services regardless of the success of the SIG transaction, (Beer Aff. ¶¶ 16-19), the exercise of jurisdiction based on this single meeting would be unfair and inappropriate given the dearth of purposeful direction exhibited by Northwest. *See Novacare, Inc. v. Strategic Theracare Alliance*, Civ. A. No. 98-6205, 1999 WL 259848, at *8 (E.D. Pa. Apr. 30, 1999) (finding no personal

---

attached the letter of intent to their Complaint, they did not attach the 2004 Letter Agreement, on which they now base their jurisdictional arguments, to either their Complaint or to their opposition to Defendant's motion to dismiss.

[3] Even if Plaintiffs' alleged injury arose directly from the formation or execution of the 2004 Letter Agreement, Northwest has not exhibited any purposeful direction in connection with that agreement that would support jurisdiction. Beer initiated the business relationship by reaching out to Northwest. (Auerbach Aff. ¶ 6); *see Verotex*, 75 F.3d at 152 (personal jurisdiction did not exist over defendant where contract resulted from plaintiff's solicitation of defendant). More importantly, since the 2004 Letter Agreement did not require any performance in Pennsylvania, Beer's independent selection of those entities which he pursued as potential investors cannot establish purposeful direction *on behalf of Northwest*. (*See* Pls' Opp'n at 7 ("[T]he contemplated future consequences of the Letter Agreement were to take place from wherever Plaintiff acquired potential investors, including Pennsylvania . . . ."); (Beer Aff. ¶ 11)); *see DiVeronica*, 983 F.2d at 555 ("'[U]nilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.'") (*quoting Helicopteros*, 466 U.S. at 417). Furthermore, the parties negotiated the 2004 Letter Agreement in New York—although Northwest sent emails, phone calls and faxes into Pennsylvania, these contacts are insufficient in light of the totality of the circumstances to warrant jurisdiction. (Auerbach Aff. ¶ 8; Pls.' Opp'n at 2); *Verotex*, 75 F.3d at 152 (communications sent into the forum by a non-resident in furtherance of a business relationship with a forum resident are insufficient on their own to establish personal jurisdiction); *see also Creative Waste Mgmt., Inc. v. Capitol Envtl. Servs., Inc.*, Civ. A. No. 04-1060, 2004 WL 2384991, at *5 (E.D. Pa. Oct. 22, 2004) (collecting cases).

jurisdiction despite a meeting between defendants' representative and plaintiff's representatives in the forum state regarding one of the several agreements between the parties); *see also NAPA Dev. Corp. Inc. v. Pollution Control Fin. Auth. of Warren County*, 346 F. Supp. 2d 730, 733 (E.D. Pa. 2004) ("A defendant should not anticipate being haled into court in a jurisdiction with which it has merely attenuated, random or fortuitous contacts.").

Accordingly, because Plaintiffs have failed to show sufficient minimum contacts related to their injury to establish specific jurisdiction over Defendant, this Court lacks jurisdiction.

   B.   *Transfer to the Southern District of New York is Appropriate*

"[A] district court may transfer a case pursuant to [28 U.S.C.] § 1404(a) without personal jurisdiction over the defendant." *Creative Waste Mgmt.*, Civ. A. No. 04-1060, 2004 WL 2384991, at * 8 n.5 (*citing United States v. Berkowitz*, 328 F.2d 358, 360-61 (3d Cir. 1964)). However, even if this Court concluded that jurisdiction existed over Northwest, the relevant analysis under 28 U.S.C. § 1404(a) indicates that transfer to the Southern District of New York is proper.

For the convenience of the parties and witnesses and in the interest of justice, a district court may transfer a matter to any other district in which that matter could have originally been brought. 28 U.S.C. § 1404(a) (2007). The moving party bears the burden of illustrating that, on balance, the relevant private factors and public factors weigh in favor of a transfer. *Connors v. R & S Parts & Servs., Inc.*, 248 F. Supp. 2d 394, 396 (E.D. Pa. 2003) (*citing In re United States*, 273 F.3d 380, 388 (3d Cir. 2001)). Private factors include: (1) the plaintiff's preferred forum; (2) the defendant's preferred forum; (3) where the claim arose; (4) the convenience of the witnesses to the extent they would be unavailable at trial in one of the fora; and (5) the availability of documents and other

evidence. *Id.* at 395 (*citing Jumara*, 55 F.3d at 879). Public factors include: (1) the enforceability of the judgment; (2) practical considerations that make trial easier or less expensive; (3) the relative administrative difficulty related to court congestion; (4) the relative importance of the fora in deciding the controversy; and (5) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* at 395 (*citing Jumara*, 55 F.3d at 879). District courts have considerable discretion to transfer litigation to a more convenient forum. *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir. 1973).

     *1. Private Factors Weigh in Favor of a Transfer*

Central to this Court's inquiry is the fact that all of the operative events giving rise to Plaintiffs' claims occurred in New York. *See Lomanno v. Black*, 285 F. Supp. 2d 637, 644-45 (E.D. Pa. 2003). Northwest communicated with SIG representatives based in SIG's New York office and conducted meetings with those representatives in New York City for purposes of negotiating the SIG transaction. (Auerbach Aff. ¶¶ 14-16.) The letter of intent between Northwest and SIG, on which Plaintiffs base their claim for a success fee, was signed during the course of those negotiations. (Compl. ¶¶ 16-27; *see* Def.'s Mem. at 4.) In contrast, the events that took place in Pennsylvania, such as Beer's meetings with SIG investors and Auerbach, are at most tangentially related to Plaintiffs' claims. *See Lomanno*, 285 F. Supp. 2d at 642 (explaining that "[e]ven if some events that gave rise to a claim occurred in a district, events or omissions that might only have some tangential connection with the dispute in litigation are not enough.") (internal citations omitted); *Conners*, 248 F. Supp. 2d at 396 (ordering transfer where plaintiffs claim arose in transferee district).

Although Plaintiffs' choice of forum weighs against transfer, a plaintiff's preference is afforded less deference where "most if not all" of the defendant's conduct occurred in another forum.

9

*Lomanno*, 285 F. Supp. 2d at 644 (citations and quotations omitted). Defendant's preferred forum weighs in favor of a transfer since Northwest would prefer to litigate in the Southern District of New York. The remaining private factors are neutral since Northwest does not submit that either witnesses or documents would be unavailable in either Pennsylvania or New York. *Connors*, 248 F. Supp. 2d at 396 ("[T]he convenience of the witnesses is relevant only if they might be unavailable for trial."); *Lomanno*, 285 F. Supp. 2d at 647 (consideration of the location of books and records should be "limited to the extent that the files could not be produced in the alternative forum") (*citing Jumara*, 55 F.3d at 879). On balance, the private factors weigh in favor of a transfer, primarily because the operative facts giving rise to this litigation occurred in the Southern District of New York.

          *2.     Public Factors Weigh in Favor of a Transfer*

"[D]epending on the circumstances, some public interest factors may play no role in a Section 1404(a) balancing" and therefore need not be considered by the Court. *Lomanno*, 285 F. Supp. 2d at 647. The only significant public factor in this case is the familiarity of the trial judge with the applicable state law. Northwest asserts that New York law governs the instant dispute, a point which the Plaintiffs do not dispute. (Def.'s Mem. at 16.) Furthermore, the letter of intent between Northwest and SIG must, by its terms, be construed in accordance with New York law. (Compl. Ex. A ¶ 7.) Without undertaking a formal choice of law analysis, this Court assumes that New York law applies to the current dispute such that transfer to the Southern District of New York would yield a trial judge more familiar with the governing law than this Court.

Overall, the balance of this public factor, the fact that the Plaintiffs' claims arise from events that occurred in New York, and Northwest's preference for a transfer outweigh Plaintiffs' preference

to remain in the Eastern District of Pennsylvania. Moreover, venue is proper in the Southern District of New York because Northwest is "present in the district and conducts a substantial portion of its business from the district." (Auerbach Aff. ¶ 5; Def.'s Mem. at 15.); *see* 28 U.S.C. § 1391(a) (2007) (in a diversity action, venue is appropriate in "a judicial district where any defendant resides"); *id* § 1391(c) (specifying that for venue purposes, a corporate defendant resides in any district in which it is subject to personal jurisdiction). Accordingly, since the Southern District of New York is the more convenient forum for this lawsuit, and since venue there would be appropriate, transfer is warranted.

### IV.   CONCLUSION

For the reasons set forth above, this Court lacks personal jurisdiction over Northwest and concludes that this matter should be transferred to the Southern District of New York. Defendant's motion is granted and an appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NEW TRAIL CAPITAL and | : | |
| MICHAEL BEER, | : | CIVIL ACTION |
|     Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| THE NORTHWEST COMPANY, INC., | : | No. 07-2073 |
|     Defendant. | : | |

## ORDER

**AND NOW**, this **4th** day of **October, 2007**, upon consideration of Defendant's Motion to Dismiss or in the Alternative to Transfer Venue, Plaintiffs' response thereto, Defendant's reply thereon, and for the foregoing reasons, it is hereby **ORDERED** that Defendant's motion (Document No. 6) is **GRANTED** and this matter is **TRANSFERRED** to the United States District Court for the Southern District of New York.

BY THE COURT:

**Berle M. Schiller, J.**